**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EARL WHALEY | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 10-4343 |
| v. | : | **OPINION** |
| BOROUGH OF COLLINGSWOOD, | : | |
| BOROUGH OF WOODLYNE, DIRECTOR | | |
| AND/OR CHIEF OF THE COLLINGSWOOD | : | |
| POLICE DEPARTMENT THOMAS | | |
| GARRITY, JR., DETECTIVE SGT. | : | |
| EDWARD CORRELL, and OFFICER BRIAN | | |
| EIDMANN | : | |
| Defendants. | | |

**RODRIGUEZ**, Senior District Judge

This matter is before the Court on Defendants' motion for summary judgment [Dckt. Entry #17]. Plaintiff Earl Whaley filed a complaint against the Borough of Collingswood, the Borough of Woodlyne [sic], Director and/or Chief of the Collingswood Police Department Thomas Garrity, Jr., Detective Sgt. Edward Correll and Officer Brian Eidmann, stating claims for excessive force, unlawful arrest, warrantless entry of his home, and malicious prosecution in violation of the Fourth and Fourteenth Amendments. Plaintiff also states claims for violations of his First Amendment rights by virtue of his being punished for protected speech. At issue is whether a finding for Plaintiff on his Section 1983 claims would necessarily imply the invalidity of his convictions for resisting arrest and aggravated assault, and therefore bar those claims under Heck v. Humphrey. Also at issue is whether Defendant Eidmann is entitled to qualified immunity and whether Plaintiff can succeed on his claims against the

1

municipal defendants.[1] The Court has considered the written submissions of the parties

and oral argument was heard on May 21, 2012. For the reasons discussed below,

Defendants' motion will be granted in part and denied in part.

## **Background**

On August 25, 2008, at approximately 1:00 a.m., Plaintiff Earl Whaley was

playing cards with friends at a table on his front porch at his home in Woodlynne, N.J.

Defendant Officer Brian Eidmann of the Collingswood Police Department was on patrol

and driving down Plaintiff's street; through an agreement between the municipalities,

the Collingswood Police Department policed Woodlynne. Officer Eidmann states that as

he drove past the house, he heard loud noise coming from the porch. After making an

initial pass and driving around the block, Eidmann states that he drove back and

stopped in front of Whaley's house. Eidmann approached the front steps and asked

those present on the porch to keep the noise down, stating that there had been

complaints from neighbors regarding the noise, though Eidmann now admits there had

been no complaints. Plaintiff replied that no one was screaming and told Eidmann to go

about his business; Plaintiff used profanity when doing so. Eidmann again told Plaintiff

to keep the noise down and Plaintiff again made profanity-laced comments that

Eidmann should "go about [his] fucking business" and that no one was screaming.

Plaintiff also told Eidmann not to come onto his front porch. The porch was enclosed by

screens and was accessed through a closed screen door. Eidmann told Plaintiff that if he

had to come back because of the noise, Plaintiff would be arrested. Most of the facts as

---

[1] The Borough of Woodlynne was dismissed from this action on July 1, 2011.

to exactly what happened next are in dispute to some degree.

After Eidmann's statement about arresting Plaintiff if he had to come back because of the noise, Eidmann began to walk away until Plaintiff responded that Eidmann "fucking talk too much" and told Eidmann to "go about your fucking business." Eidmann then notified Dispatch that he would be taking an individual into custody. According to Eidmann, he decided to arrest Plaintiff for disorderly conduct due to Plaintiff's continuing noncompliance with his instructions to reduce the noise. Plaintiff, however, points to Eidmann's statements to another police officer on the scene after these incidents in which Eidmann claims Plaintiff said "fuck you" as Eidmann was walking away and that as a result of what Plaintiff said, Eidmann decided to arrest Plaintiff (there is no meaningful dispute that Plaintiff did not in fact say "fuck you"). In any event, Eidmann then opened the screen door and entered onto the front porch.

The parties dispute what happened next. Eidmann states that he twice told Plaintiff to get up and that he was under arrest. According to Eidmann, Plaintiff ignored him and continued to sit and play cards. Eidmann then pulled the chair out from under Plaintiff in order to arrest him, but Plaintiff did not fall to the ground. Eidmann claims that Plaintiff stood up and took an aggressive stance about 9" away from Eidmann. Eidmann asserts that he told Plaintiff to turn around so he could handcuff him. Plaintiff turned but when Eidmann touched Plaintiff's hand to handcuff him, Plaintiff turned back around, pushed Eidmann, and said "you ain't cuffin me motherfucker." Eidmann again told Plaintiff to turn around and put his hand on his shoulder to turn him, and Plaintiff pushed him again. To defend himself, Eidmann claims, he then struck Plaintiff in the face. It is claimed that Plaintiff then knocked Eidmann's radio off his shoulder,

3

and when Eidmann went to retrieve it, Plaintiff punched him several times in the back of the head. An altercation ensued, and eventually both men fell out the door and down the steps. Eidmann claims Plaintiff then stood up and proceeded to punch and kick him while he was on the ground. Plaintiff then fled the premises. Eidmann was unable to pursue him because he blacked out. Eidmann suffered a number of injuries, including intermittent numbness in fingers on his right hand and injuries to his right shoulder.

Plaintiff tells a different story. According to Plaintiff, Eidmann entered the porch and told Plaintiff to get up twice within one second and immediately pulled the chair out from under him. Both Plaintiff and an audio recording from Eidmann's patrol car indicate that Eidmann did not tell Plaintiff that he was under arrest prior to pulling out the chair. Plaintiff disputes that he continued playing cards and states that after Eidmann told him to get up the first time, he said "yeah, alright;" this can be heard on the audio recording from Eidmann's police cruiser. In addition, Plaintiff denies taking an "aggressive stance" and contends that, contrary to Eidmann's account, Eidmann pushed him first. Plaintiff also denies saying "you ain't cuffin' me motherfucker," and asserts that he stated "cuff me" several times; this can also be heard on the audio recording. Plaintiff claims that he thought Eidmann's purpose was to beat him up, not to arrest him, so he fought back. Plaintiff denies punching the back of Eidmann's head on the porch and denies punching and kicking Eidmann after the two men fell down the front steps. Plaintiff turned himself in at the police station 19 hours after the incident.

Plaintiff was charged with two counts of resisting arrest (by force and by flight), aggravated assault on a police officer, and disorderly conduct. Following a bench trial, he was convicted on both counts of resisting arrest and of assault on a police officer and

acquitted on the disorderly conduct charge. Plaintiff appealed and his convictions were affirmed. Plaintiff filed this Complaint on August 24, 2010. Defendant Borough of Woodlynne was dismissed on July 1, 2011. The remaining Defendants filed the present motion for summary judgment on September 20, 2011.

## Discussion

## I. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once

5

the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## II. 42 U.S.C. § 1983

Plaintiff's Constitutional claims are governed by 42 U.S.C. § 1983.  A plaintiff may have a cause of action under 42 U.S.C. § 1983  for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom,

6

> or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, a plaintiff must demonstrate two essential elements to maintain a claim under section 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994); Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989).

A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory.  Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978).  However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind,  the alleged violation of Plaintiff's rights.  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).  Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).  Further, a plaintiff must show that the municipality acted with "deliberate indifference" to the known policy or custom.  Canton v. Harris, 489 U.S. 378, 388 (1989).  "A showing of simple or even heightened

negligence will not suffice." <u>Board of County Comm'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. at 397, 407 (1997).

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 818 (2009).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Couden v. Duffy</u>, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. <u>Couden</u>, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence

8

could disagree on th[e] issue, immunity should be recognized." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). <u>See also</u>, <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.). Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. <u>See</u> <u>Beers-Capital v. Whetzel</u>, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

## III. Analysis

### A. Heck v. Humphrey

Defendants first argue that Plaintiff's claims are barred by <u>Heck v. Humphrey</u>, 412 U.S. 477 (1994), because a judgment in Plaintiff's favor on his 1983 claims would imply the invalidity of Plaintiff's convictions for resisting arrest and aggravated assault. If true, it is not proper for this court to grant summary judgment because the complaint must be dismissed. <u>See id.</u> at 490 (affirming appellate court's dismissal).[2]

In <u>Heck</u>, the Supreme Court stated:

In order to recover damages for allegedly unconstitutional conviction or

---

[2] This court could not entertain this action if <u>Heck</u> so prohibits and, thus, could not grant any judgment. Additionally, this distinction is important because it affects the burden of proof. While defendant has the burden of demonstrating the lack of a genuine issue of material fact in a summary judgment motion, <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), under <u>Heck</u> the "plaintiff must prove that the conviction or sentence has been reversed . . . or called into question," 512 U.S. at 486-87.

Furthermore, a dismissal under <u>Heck</u> is without prejudice. A plaintiff whose § 1983 claim is dismissed under <u>Heck</u> may be able to re-file a suit if he can demonstrate in the future that the conviction that might be called into question has itself been called into question in a habeas corpus petition. Although this court expresses no opinion on the merits of such a petition, if Plaintiff were to succeed in a habeas petition attacking his conviction because it may have been unconstitutional, after such a successful petition he may be able to re-file this suit. If this court enters judgment against plaintiff, that could have a preclusive effect on future filings.

imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.

Id. at 486-87 (footnotes omitted).

A finding in favor of Plaintiff has the potential of calling into question his convictions for aggravated assault on a police officer and resisting arrest. The Court therefore "must consider" whether Plaintiff's action "will necessarily imply the invalidity" of those convictions.

## a. Aggravated Assault on a Police Officer

Plaintiff was charged and convicted for violation of N.J.S.A. 2C:12-1b(5)(a), aggravated assault on a police officer, third degree. Under that provision

b. [a] person is guilty of aggravated assault if he . . . (5) commits a simple assault as defined in subsection a. (1), (2) or (3) of this section upon . . . (a) [a]ny law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority or because of his status as a law enforcement officer.

N.J.S.A. 2C:12-1b (2006). Pursuant to subsection a., a person is guilty of simple assault if he

(1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
(2) Negligently causes bodily injury to another with a deadly weapon; or

10

(3) Attempts by physical menace to put another in fear of imminent serious bodily injury.

N.J.S.A. 2C:12-1a (2006). A citizen is entitled to use self-defense to protect himself from an officer's use of unreasonable force. State v. Mulvihill, 270 A.2d 277, 279-80 (N.J. Super. App. Div. 1970).

In the context of fighting back during an arrest, self-defense will only serve as a defense to a charge of assault if the person arrested uses no greater force than is reasonably necessary to protect against the excessive force. "If he employs such greater force, then he becomes the aggressor and forfeits the right to claim self-defense to a charge of assault and battery on the officer." Id. at 280. Thus, if a person arrested uses an amount of force that is reasonable in relation to the amount of force being used by an officer allegedly using excessive force, he cannot be guilty of assault. Only where a person being arrested uses an amount of force greater than the amount of force used by an officer allegedly using excessive force can he be found guilty of assault.

Here, the trial court in Plaintiff's criminal proceeding found that the State had proven the elements of aggravated assault beyond a reasonable doubt. The court also determined that Plaintiff's self-defense claim as to the aggravated assault charge was precluded and the State had "disproven beyond a reasonable doubt that [Plaintiff's] conduct was a product of justifiable self-defense." Def.'s Br., Ex. "G" at 17 ("Tr. Ct. Op." (Wells, J.)). The court additionally found that the State had "proven beyond a reasonable doubt that Eidmann did not use substantially more force than was necessary to affect the arrest of [Plaintiff]" and that Eidmann did not use "excessive force, but rather attempted to use the amount of force necessary merely to accomplish the arrest."

Id. at 17, 18. A finding in Plaintiff's civil suit–under a preponderance of the evidence standard–that Eidmann employed excessive force against Plaintiff would contradict and imply the invalidity of the State court's findings and judgment with respect to Plaintiff's aggravated assault conviction. Had Eidmann employed excessive force in conducting the arrest, Plaintiff would have possessed some right to defend himself, which the trial court did not find to be the case. Accordingly, under Heck, Plaintiff's excessive force claim will be dismissed.[3]

### b. Resisting Arrest

Plaintiff was charged with and convicted of two counts of resisting arrest, by force and by flight, pursuant to N.J.S.A. 2C:29-2, which provides:

> (1) Except as provided in paragraph (3), a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest. (2) Except as provided in paragraph (3), a person is guilty of a crime of the fourth degree if he, by flight, purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest. (3) An offense under paragraph (1) or (2) of subsection a. is a crime of the third degree if the person:

> (a) Uses or threatens to use physical force or violence against the law enforcement officer or another; or

> (b) Uses any other means to create a substantial risk of causing physical injury to the public servant or another.

---

[3] Plaintiff argues that the state courts did not address Eidmann's initial use of force in pulling out Plaintiff's chair, instead focusing only on Eidmann's use of force in relation to effecting the arrest. Because of this, Plaintiff contends, the excessive force claim ought to survive at least with respect to the removal of the chair. The Appellate Division, however, did consider Eidmann's removal of the chair in the totality of the circumstances surrounding the arrest and upheld the trial court's findings that the amount of force employed by Eidmann was reasonable under the circumstances. See State v. Whaley, 2011 WL 1631116, at *9-*10 (N.J. Super. App. Div. May 2, 2011) (per curiam).

N.J.S.A. 2C:29-2a. New Jersey's resisting arrest statute does not make a distinction as between lawful and unlawful arrests. Rather, "[i]t is not a defense to a prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest, provided he was acting under color of his official authority and provided the law enforcement officer announces his intention to arrest prior to the resistance." Id.

At Plaintiff's criminal trial, the trial court did not reach any of the constitutional issues Plaintiff raised in his defense and specifically declined to address whether or not probable cause existed for the arrest. The court found that it did "not need to resolve whether probable cause could be established to justify a warrantless search, seizure or arrest" because once Eidmann announced that Plaintiff was under arrest it did not matter whether or not the arrest was illegal or unlawful; under New Jersey law, a defendant may not resist even an unlawful arrest. Tr. Ct. Op. 12. The court similarly concluded that it need not reach and determine the issue of "the right to free speech and/or other constitutionally protected conduct" as such determinations were not "absolutely imperative" to the disposition of Plaintiff's case. Id. at 15. In addition, on appeal, the Appellate Division found that Plaintiff's reliance on a Fourth Amendment violation as the basis of his appeal of his resisting arrest conviction was "misplaced" because the unlawfulness of the arresting officer's actions is not a defense under the statute. State v. Whaley, 2011 WL 1631116, at *6 (N.J. Super. App. Div. May 2, 2011) (per curiam).

Even if Eidmann entered the porch or arrested Plaintiff unlawfully, Plaintiff had a legal obligation to submit to the arrest and was not entitled to resist. Tr. Ct. Op. 11 (citing State v. Crawley, 901 A.2d 924 (N.J. 2006)). Because the legality of Plaintiff's

13

arrest held no bearing on whether or not he was convicted of resisting arrest, a judgment in Plaintiff's favor on his 1983 claims for violations of his Fourth and First Amendment rights would not necessarily imply the invalidity of his convictions for that charge. Accordingly, Plaintiff's remaining claims are not barred by <u>Heck</u>.

## B. Qualified Immunity

Defendants next argue that even if <u>Heck</u> does not bar Plaintiff's claims, Defendant Eidmann is entitled to qualified immunity because he did not violate Plaintiff's constitutional rights. The Court must therefore address whether Eidmann's conduct violated any constitutional rights and, if so, whether such rights were clearly established at the time the challenged conduct occurred. Plaintiff states claims arising under the Fourth and First Amendments.

## 1. Fourth Amendment Claims

Plaintiff's claims for unlawful arrest, malicious prosecution and unlawful entry are governed by the Fourth Amendment, which provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

The Court will address each claim in turn.

## a. Unlawful Arrest

To prove a claim for unlawful arrest, Plaintiff must show that he was arrested without probable cause. <u>Sharrar v. Felsing</u>, 128 F.3d 810 (3d Cir. 1997). Probable cause exists where "'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to

14

warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Schneider v. Simonini, 749 A.2d 336, 349-50 (N.J. 2000) (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949)). Probable cause is less than proof needed to convict, but more than mere suspicion.  Id. A police officer can defend a § 1983 claim by establishing: (1) that he or she acted with probable cause; or, (2) if probable cause did not exist, that a reasonable police officer could have believed it existed. Kirk v. City of Newark, 536 A.2d 229, 234 (N.J. 1988) (citing Anderson, 483 U.S. at 663-64).

The existence of probable cause is generally a factual issue for the jury. Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995). However, a district court may determine that probable existed "as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (citations omitted).

Plaintiff argues that there was no probable cause to arrest him and asserts that Eidmann's reason for arresting Plaintiff was Plaintiff's swearing at Eidmann, which, Plaintiff contends, was not unlawful (See Part "2," *infra*). Eidmann's subjective motivation for the arrest, however, is irrelevant under the objective standard required for a qualified immunity analysis of the unlawful arrest claim. Blaylock v. City of Philadelphia, 504 F.3d 405, 411 (3d Cir. 2007). Rather, the inquiry is whether a reasonable officer could have believed that probable cause existed to arrest Plaintiff in light of clearly established law and the information Eidmann possessed. Id. (citation omitted).

At oral argument, Defendants argued that the appellate court found that

Eidmann's decision to arrest Plaintiff was "reasonable and therefore constitutional." The appellate court's opinion does not support such a conclusion, however, as the court did not explicitly address probable cause for Plaintiff's arrest or reach the constitutional issue. Rather, the Appellate Division applied New Jersey law, as discussed in State v. Crawley, to conclude that Eidmann was "acting under color of his official authority" and that Plaintiff had no right to resist arrest even if the arrest were later found to be unlawful. See Whaley, 2011 WL 1631116, at *4-*5; N.J.S.A. 2C:29-2a. Thus, the Appellate Division did not reach the issue or decide that Plaintiff's arrest was constitutional.

Nevertheless, the state courts' findings regarding Plaintiff's conviction limit Plaintiff's ability to state a claim for unlawful arrest. It is well established that federal courts must give state-court judgments issue preclusion effect in subsequent actions under 42 U.S.C. § 1983. Ivy Club v. Edwards, 943 F.2d 270, 280 (3d Cir. 1991) (citing Migra v. Warren City School District Board of Education, 465 U.S. 75, (1984)). A finding in a prior criminal proceeding may estop an individual from litigating the same issue in a subsequent civil proceeding. James v. Heritage Valley Federal Credit Union, 197 Fed. Appx. 102, 105, (3d Cir. 2006) (citing Emich Motors Corp. v. Gen. Motors Corp., 340 U.S. 558, 568-69 (1951)). A federal court is to "give the same preclusive effect to a state-court judgment as another court of that State would give." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005). Under New Jersey law, issue preclusion applies where (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the

16

determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. <u>Township of Middletown v. Simon</u>, 937 A.2d 949, 954 (N.J. 2008).

Here, the state courts made findings of fact that were essential to the courts' conclusions that Eidmann acted with the required "good faith" under New Jersey law such that Plaintiff was required to submit to Eidmann's arrest regardless of whether Plaintiff felt the arrest was justified. The trial court found that Eidmann heard loud noise coming from the porch and that upon Eidmann's request to keep the noise down, Eidmann was met with "immediate resistance" from Plaintiff and continued "noncompliance." Tr. Ct. Op. 5, 6. The Appellate Division found that "Eidmann's conduct in approaching the porch and asking the group to quiet down at 1:00 a.m. was consistent with his duties as a police officer." <u>Whaley</u>, 2011 WL 1631116, at *5. The court also found that Eidmann's instructions to quiet down were reasonable under the circumstances and that Plaintiff had a duty under the law to obey them. <u>Id.</u> (citing <u>State v. Lashinsky</u>, 404 A.2d 1121, 1126 (N.J. 1979) ("where an officer's instructions are obviously reasonable, in furtherance of his duties, an individual toward whom such instructions are directed has a correlative duty to obey them. If his refusal to respond results in an obstruction of the performance of the officer's proper tasks, this will constitute a violation of the disorderly persons statute")). Because Plaintiff did not obey Eidmann's instructions, the court found that Eidmann's "decision to arrest [Plaintiff] for violation of the [disorderly conduct] ordinance was reasonable at the time, notwithstanding any later decision by the court as to the violation of the disorderly persons ordinance." <u>Id.</u>

It is not the place of this Court to relitigate the factual issues determined by the state courts during Plaintiff's criminal proceedings. The Court therefore gives preclusive effect to the state trial and appellate courts' findings that Plaintiff failed to comply with Eidmann's instructions, that such instructions were reasonable, and that Plaintiff had a legal duty to comply. Plaintiff's noncompliance could constitute a disorderly persons offense under New Jersey law. Accordingly, the Court concludes that a reasonable officer facing the situation encountered by Eidmann could have believed that probable cause existed to arrest Plaintiff for his noncompliance. In addition, viewing the facts most favorably to Plaintiff, insofar as they are consistent with the state courts' factual findings, the evidence would not reasonably support a finding that probable cause did not exist where it has been found that Plaintiff had a duty to obey Eidmann's instructions and failed to do so. Accordingly, summary judgment will be granted as to Plaintiff's claim for unlawful arrest.

**b. Malicious Prosecution**

To establish malicious prosecution under § 1983, a Plaintiff must establish that: (1) the defendant initiated a criminal proceeding; (2) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding; (3) the criminal prosecution resulted in plaintiff's favor; (4) the proceeding was initiated without probable cause; and (5) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice. DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 566 (D.N.J. 2000).

In his written response, Plaintiff did not contest Defendants' motion with respect to the malicious prosecution claim and conceded at oral argument that the claim is

18

lacking in support. In any event, Plaintiff cannot maintain a claim for malicious prosecution where his criminal proceeding was initiated with probable cause. Accordingly, summary judgment will be granted as to Plaintiff's malicious prosecution claim.

**c. Unlawful Entry**

In the context of a claim for unlawful entry or search, the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." See Minnesota v. Olson, 495 U.S. 91, 95 (1990) (quoting Rakas v. Illinois, 439 U.S. 128, 143 (1978)).  An expectation of privacy is deemed legitimate if the person challenging the search can show that he or she has "both a subjective expectation of privacy and that the expectation is objectively reasonable, that is, one that society is willing to accept." Warner v. McCunney, 259 Fed. Appx. 476, 477 (3d Cir. 2008) (citing Olson, 495 U.S. at 96-97); see also Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

"One's home is sacrosanct, and unreasonable government intrusion into the home is 'the chief evil against which the wording of the Fourth Amendment is directed.'" U.S. v. Zimmerman, 277 F.3d 426, 431 -432 (3d Cir. 2002) (citing Payton v. New York, 445 U.S. 573, 585 (1980)). In general, a warrantless entry into a person's house is unreasonable *per se*. U.S. v. Stabile, 633 F.3d 219, 230 (3d Cir. 2011) (citation omitted). Exceptions to this rule include consent, or probable cause accompanied with exigent circumstances which justify the intrusion. U.S. v. Coles, 437 F.3d 361, 365 -366 (3d Cir. 2006) (citing Steagald v. United States, 451 U.S. 204, 211 (1981)). Examples of exigent

circumstances include, but are not limited to, hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others. Coles, 437 F.3d at 366. "[I]n the absence of exigent circumstances the warrantless entry of a private dwelling place for the purpose of making an arrest is unlawful." U.S. v. Williams, 612 F.2d 735, 738 (3d Cir. 1979). See also, Welsh v. Wisconsin, 466 U.S. 740, 750 (1984) ("When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness [that attaches to all warrantless home entries] is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate").

The protections of the Fourth Amendment extend not only to a person's home, but also to the curtilage surrounding the property. Estate of Smith v. Marasco, 318 F.3d 497, 518 -519 (3d Cir. 2003). "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." U.S. v. Dunn, 480 U.S. 294, 300 (1987). Determination as to whether an area is part of the curtilage "should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id. at 301.

Here, Plaintiff's front porch was protected curtilage of the home. The porch is screened in, attached to the home and accessed by a screen door. At least on the night of the incident in question, Plaintiff put the porch to use in a manner consistent with the

20

activities of home life, here, sitting at a table and playing cards. While it may be the case that the porch had a lowered expectation of privacy by virtue of its being visible through the screens which enclosed it, as well as the fact that visitors must access it in order to call on Plaintiff, it is undisputed that prior to the arrest, Plaintiff explicitly (and in explicit language) instructed Eidmann not to enter onto the porch. In doing so, Plaintiff withdrew any implied and more generalized consent to enter the porch that may have existed otherwise. Eidmann was thus excluded from the porch and did not have consent to enter. Accordingly, without probable cause and exigent circumstances, Eidmann's warrantless entry to arrest Plaintiff would have been unlawful under the Fourth Amendment. This is all the more true given that Eidmann arrested Plaintiff for a minor offense. See Welsh, 466 U.S. at 750.

Although there may have been probable cause to arrest Plaintiff, Defendants point to no evidence of any exigency that would have justified Eidmann's entry without a warrant in order to arrest Plaintiff for a disorderly persons offense. Thus, viewing the facts in the light most favorable to Plaintiff, Eidmann's warrantless entry for the purpose of effecting a warrantless arrest of Plaintiff for a minor offense constituted a Fourth Amendment violation. Moreover, the law at the time the incident occurred was sufficiently clear to place a reasonable officer on notice that such an entry, contrary to an explicit denial of consent and absent any exigency, violated the law.[4] Accordingly,

---

[4] The mere fact that the screened-in area of the porch was visible or even generally accessible to the public does not diminish the clarity of the law with respect to whether Eidmann could have justifiably entered. That which a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Katz v. U.S., 389 U.S. 347, 351-352 (1967). Though Plaintiff may have possessed a lower expectation of privacy in his front porch for the reasons discussed, Plaintiff was within

Eidmann is not entitled to qualified immunity as to the unlawful entry claim and summary judgment will be denied.

## 2. First Amendment Claims

Plaintiff contends that he had a constitutionally protected right to object to and make comments about Officer Eidmann's conduct and that Eidmann punished Plaintiff in violation of the First Amendment by arresting him for using profane language. In support of this contention, Plaintiff relies on the statements Eidmann made at the scene to another officer which suggested that Eidmann decided to arrest Plaintiff because Plaintiff said "fuck you." Plaintiff denies making that statement, but admits using profanity in his comments to Eidmann.

The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. City of Houston, Tex. v. Hill, 482 U.S. 451, 461 (1987). Even speech that is "provocative and challenging" is "protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." Id. (citation omitted). See also, Johnson v. Campbell, 332 F.3d 199, 212 (3d Cir. 2003) (First Amendment protects speech that is "unpleasant, disputatious, or downright offensive"). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Hill, 482 U.S. at 462-63. See also, Payne v. Pauley, 337 F.3d 767, 776 (7th Cir. 2003) ("the First Amendment protects even

his rights to limit or eliminate public access to his porch and sought to do so by instructing Eidmann not to enter.

profanity-laden speech directed at police officers"); U.S. v. Poocha, 259 F.3d 1077, 1082 (9th Cir. 2001) (defendant's yelling "fuck you" at a park ranger did not constitute fighting words and constituted constitutionally protected speech).

While "fighting words" are not protected speech, profane words alone, unaccompanied by any evidence of violent arousal, are not "fighting words" and are therefore protected speech. Johnson, 332 F.3d at 212. "To be punishable, words must do more than bother the listener; they must be nothing less than 'an invitation to exchange fisticuffs.'" Id. (citation omitted). Moreover, with respect to words addressed to a police officer, the Supreme Court has suggested that the exception with respect to "fighting words" has a narrower application "because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" Hill, 482 U.S. at 462.

Plaintiff's First Amendment claim rests on resolution of the question of probable cause. As discussed above, if probable cause existed to believe Plaintiff had committed a crime, there can be no inquiry into Eidmann's subjective motivation for arresting Plaintiff, and there could be no claim for a First Amendment violation arising out of Plaintiff's arrest, even if Plaintiff's speech was protected. Stated another way, if probable cause existed to arrest Plaintiff for criminal conduct, Plaintiff may not maintain his claim that he was instead arrested for protected speech. See Pulice v. Enciso, 39 Fed. Appx. 692, 696 (3d Cir. 2002) (affirming summary judgment against plaintiff's First Amendment claim of retaliatory arrest where plaintiff was not arrested for expressing her views but for violating the law); See also, Mesa v. Prejean, 543 F.3d 264, 273 (5th Cir. 2008) (where probable cause exists, "any argument that the arrestee's speech as

opposed to her criminal conduct was the motivation for her arrest must fail").

During the pendency of Plaintiff's criminal proceedings, the state courts found that Plaintiff had a duty to comply with Eidmann's instructions and failed to do so. This was a sufficient objective basis for probable cause, regardless of Eidmann's subjective intent or motive for making the arrest. See Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"). As such, Eidmann did not violate Plaintiff's First Amendment rights by arresting him because the arrest was supported by probable cause. Eidmann is therefore entitled to qualified immunity. Accordingly, summary judgment as to the First Amendment claim will be granted.

**3. Municipal and Supervisory Claims**

Defendants also move for summary judgment on Plaintiff's claims against the municipal defendants. In order to succeed on these claims, Plaintiff must show a sufficient causal connection between a municipal policy or custom, or a failure to train, and the alleged constitutional violation. As detailed above, Plaintiff's only remaining claim is the alleged unlawful entry in violation of the Fourth Amendment. Accordingly, to survive summary judgment, Plaintiff bears the burden of identifying facts and evidence establishing Collingswood's liability for Eidmann's alleged unlawful intrusion.

Plaintiff does not point to any evidence of a policy or custom of the Borough of Collingswood, or any failure to train on its part, that caused the alleged Fourth Amendment violation, nor does Plaintiff even allege any basis for municipal liability on that claim. Plaintiff looks only to an interview between Detective Sergeant Edward Cottrell and Plaintiff in attempt to infer a policy or practice of the Collingswood Police

24

Department to arrest citizens for protected speech. Without addressing the sufficiency of those arguments, the Court finds that the Borough of Collingswood cannot be liable for an alleged First Amendment violation where one did not occur. Similarly, Plaintiff offers no evidence of supervisory liability with respect to his unlawful intrusion claim nor any evidence or arguments as to the individual liability of Detective Sgt. Cottrell or Police Chief Thomas Garrity, Jr. Accordingly, summary judgment will be granted in favor of the Borough of Collingswood, Thomas Garrity, Jr., and Edward Cottrell.

## **Conclusion**

For the reasons discussed above, Defendants' Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART. The appropriate orders shall issue.


Dated: June 18, 2012

                                                     \_\_\_/s/Joseph H. Rodriguez_____
                                                     Hon. Joseph H. Rodriguez,
                                                     United States District Judge